IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

DELISA HERNANDEZ REID,
*Administrator of the Estate of
Damian Hernandez*,
      Plaintiff,

      v.                                    Civil No. 3:24cv309 (DJN)

THE GEO GROUP, *et al.*,
      Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court on Motions to Dismiss Plaintiff Delisa Hernandez Reid's ("Plaintiff") Third Amended Complaint filed by Defendant Meriam Kamara (ECF Nos. 103, 105), Defendant Delisa Jordan (ECF No. 109), and Defendants Darrin Boyd, Michael Breckon, Samuel Davis, Tanis Fritz, Quinton Hawkes, C. Jones, Tewanda Patton, Martre Powell, The GEO Group, Inc., Shakeenna Turner and S. Williams (ECF No. 113). The Court also considers two motions by all Defendants (except Defendant Kamara) seeking to join Defendant Kamara's Motion to Dismiss for Lack of Standing (ECF Nos. 108, 112). As to Defendants' Motions to Dismiss, the Court will (a) DENY Kamara's Motion to Dismiss for Lack of Standing and DENY AS MOOT the remaining Defendants' Motions to join Kamara's Motion, (b) DENY Jordan's Motion based upon Rule 8, (c) DENY Jordan's Motion as to Counts One and Two, (d) GRANT Jordan and Breckon's Motions as to Counts Five and Six, (e) GRANT Jordan, Kamara, Breckon and GEO's Motions as to Count Seven, (f) DENY AS MOOT Jordan and Kamara's assertion of qualified immunity, (g) DENY Jordan and Kamara's assertion of sovereign immunity, (h) GRANT GEO's Motion as to Count Eight, and (i) GRANT Jordan's Motion as to

punitive damages and a statutory cap on compensatory damages.  The Court will also DENY

Defendants' various Motions and Notices requesting a hearing on their Motions to Dismiss.

(ECF Nos. 115, 123, 126, 129.)  Additionally, because Count Eight proves both duplicative and

improperly pled, the Court will *sua sponte* dismiss the remainder of Count Eight in full.  This

case shall proceed on all counts not otherwise dismissed by the Court.

## I.    BACKGROUND

This negligence, gross negligence and § 1983 action arises out of Defendants' alleged

failure to provide Damien Hernandez ("Hernandez") with adequate emergency medical care at

the Lawrenceville Correctional Center ("LCC") on November 6, 2020.  Plaintiff, administrator

of Hernandez's estate, alleges that Hernandez "suffered great physical pain, injury, and mental

anguish," and later died, because of Defendants' failure to provide appropriate medical care.

(ECF No. 101 ("3d Am. Compl.") ¶¶ 53–54.)

### A.    Factual Background

At this stage, the Court must accept as true the facts set forth in the Third Amended

Complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As such, the Court accepts the

following facts for purposes of resolving the instant motions.

#### 1.    The Defendants

LCC is a privately-run prison in Lawrenceville, Virginia operated by Defendant The

GEO Group, Inc. ("GEO").  (3d Am. Compl. ¶ 5.)  The Virginia Department of Corrections

("VDOC") contracted with GEO to operate LCC.  (*Id.*)  At all times relevant to Plaintiff's

Complaint, Defendant Michael Breckon ("Breckon") served as the warden of LCC.  (*Id.* ¶ 19.)

As warden, Breckon was responsible for the training and supervision of all Defendants listed in

Plaintiff's Complaint.  (*Id.*)

2

Defendants Delisa Jordan ("Jordan"), Meriam Kamara ("Kamara") and S. Williams ("Williams") were employed by GEO as nurses at LCC. (*Id.* ¶¶ 6–8.) Plaintiff's Complaint collectively refers to these three Defendants as the "Provider Defendants." (*Id.* ¶ 9.) Further, GEO employed Defendants Tewanda Patton, Martre Powell, Tanis Fritz, Samuel Davis, Quinton Hawkes, Darrin Boyd, Shakeenna Turner and C. Jones as correctional officers at LCC. (*Id.* ¶¶ 10–17.) Plaintiff's Complaint collectively refers to these eight Defendants as "Correctional Officer Defendants."

### 2.    Plaintiff's Allegations Relating to Hernandez's Medical Care at LCC

Since August 1, 2007, Hernandez had been incarcerated as an inmate at LCC. (*Id.* ¶ 22.) At 3:17 a.m. on November 6, 2020, Hernandez's cellmate, Antron Elder ("Elder"), discovered Hernandez on the ground, bleeding profusely.[1] (*Id*. ¶ 23.) Elder alerted the Correctional Officer Defendants, who arrived to discover Hernandez in a pool of his own blood. (*Id.* ¶¶ 23–24.) The Correctional Officer Defendants alerted LCC's medical team, but took no action to stop Hernandez's bleeding. (*Id.* ¶ 25.) At 3:21 a.m., GEO's emergency response team and medical

---

[1]    Plaintiff's Complaint appears to reference "internal reports" as the source of this factual claim. (3d Am. Compl. ¶ 23.) Based on her use of the word "allegedly," the Court is unable to determine whether Plaintiff actually alleges that these events happened as described in the Complaint, or whether she is merely recounting what Defendants' internal reports "allege." Since this paragraph appears in a section entitled "Factual Allegations," the Court will assume that Plaintiff intends for the Court to treat them accordingly.

The Court notes that Plaintiff disagrees with Defendants on whether Hernandez's death stemmed from self-inflicted wounds, asserting that "the positions and shapes of the wounds on the backs of both of his hands, and the unexplained puncture wounds on his neck are highly uncharacteristic of a death by suicide, and are more in line with a homicide, which the Defendants failed to investigate." (*Id.* ¶ 40.) However, Plaintiff also argues in the alternative that, if Hernandez did indeed commit suicide, Defendants proximately caused such suicide. (*Id.* ¶ 71.) Since the Court need not resolve at this stage whether Hernandez's wounds were self-inflicted or not, the Court will not further engage with this purported factual dispute at this time.

staff, including Provider Defendants Jordan and Kamara, arrived at Hernandez's cell.  (*Id.* ¶ 26.)
Despite still bleeding profusely, Hernandez was responsive and talking.  (*Id.*)

The emergency team and medical staff transported Hernandez to the medical unit, a
process that took approximately 10 minutes.  (*Id.* ¶ 28.)  During that time, Plaintiff alleges that
neither of the Provider Defendants present attempted to stem Hernandez's blood loss.  (*Id.*)
Though once Hernandez arrived in the medical unit, Provider Defendants Jordan and Kamara
applied pressure to Hernandez's wounds in an attempt to stop his blood loss.  (*Id.* ¶ 31.)  Plaintiff
alleges that Defendants Jordan and Kamara failed to provide any other treatment, including
intravenous fluid therapy, which Plaintiff asserts constitutes routine treatment for cases of
hemorrhage, or immediately call 911, despite being "[in]adequately equipped to handle this
medical emergency."  (*Id.* ¶¶ 31–32.)  While Hernandez was initially responsive and speaking,
he eventually lost consciousness, prompting the staff to call 911 at 4:08 a.m.  (*Id.* ¶¶ 30, 33.)
Hernandez never made it to a hospital and was pronounced dead at 4:27 a.m.  (*Id.* ¶ 38.)

On the day before his death, Hernandez reported that he was bleeding from his rectum
and had found blood in his urine.  (*Id.* ¶ 41.)  In response, Defendants prescribed Pepto Bismol
but performed no further investigation or medical testing concerning Hernandez's symptoms.
(*Id*. ¶ 42.)

### B.    Procedural Background

On November 2, 2022, Plaintiff filed her original Complaint in the Circuit Court of
Brunswick County.  (ECF No. 1 at 2.)  Plaintiff then filed her First Amended Complaint in the
same court on October 2, 2023.  (*Id.*)  On April 29, 2024, Defendants removed Plaintiff's action
to this Court.  (ECF No. 1.)  Defendant Fritz filed an answer to the First Amended Complaint
and a Motion to Bifurcate Issues at Trial, which the Court granted on June 10, 2024.  (ECF Nos.

5, 6, 13.)  Defendants Boyd, Hawkes, Patton, Powell, Williams and GEO then filed an answer to Plaintiff's First Amended Complaint (ECF No. 15), which they later corrected (ECF No. 24). Meanwhile, Defendants Breckon, GEO and Jordan filed Motions to Dismiss.  (ECF Nos. 16, 18, 22.)  Defendants Boyd, Hawkes, Patton, Powell, Williams and GEO further filed a Motion for Joinder to Defendant Jordan's Motion to Dismiss.  (ECF No. 31.)

The Court then directed Plaintiff to complete service of process as to the remaining Defendants and file a position as to any Defendants who had failed to respond.  (ECF No. 32.) Plaintiff failed to comply with this order as to certain Defendants; as a result, the Court terminated Defendants John Does 1–10.  (ECF No. 43.)  Subsequently, Plaintiff requested, and the Clerk entered, default as to Defendant Kamara.  (ECF Nos. 49, 50.)

On August 19, 2024, Plaintiff filed her Second Amended Complaint.  (ECF No. 53.)  In response, Defendants Jordan, Breckon and GEO filed Motions to Dismiss.  (ECF Nos. 55, 57, 59.)  Defendants Powell, Hawkes, Boyd, Jones, Patton, Davis, Turner, Williams and GEO filed an answer to Plaintiff's Second Amended Complaint and asserted crossclaims against Defendant Kamara.  (ECF No. 61.)  Defendant Kamara moved to set aside the Clerk's entry of default (ECF No. 71), which the Court granted (ECF No. 80).  Defendant Kamara then filed a Motion to Dismiss Plaintiff's Second Amended Complaint.  (ECF No. 83.)

On December 18, 2024, Plaintiff filed her Third Amended Complaint.  (ECF No. 101.) Count One asserts a negligence claim of wrongful death under Virginia Code § 8.01-50, *et seq.*, against Provider Defendants and GEO, while Count Two asserts, in the alternative, a negligence survival action against the same Defendants.  (*Id.* ¶¶ 49–65.)  Count Three asserts a negligence claim of wrongful death under Virginia Code § 8.01-50, *et seq.*, against Correctional Officer Defendants and GEO, while Count Four asserts, in the alternative, a negligence survival action

against these Defendants.  (*Id.* ¶¶ 66–88.)  Count Five asserts a gross negligence wrongful death claim against all Defendants.  (*Id.* ¶¶ 89–99.)  Count Six asserts, in the alternative, a gross negligence survival claim against all Defendants.  (*Id.* ¶¶ 100–10.)  Count Seven asserts various § 1983 claims against all Defendants.  (*Id.* ¶¶ 111–30.)  Finally, Count Eight asserts a stand-alone respondeat superior claim, alleging that GEO is "legally responsible" for its employees' actions and inactions performed within the scope of their official duties.  (*Id.* ¶¶ 131–39.)  Based on the foregoing claims, Plaintiff seeks to hold Defendants jointly and severally liable for compensatory damages of ten million dollars and punitive damages of $350,000 plus interest, costs and attorney fees.  (*Id.* at 25.)

Defendants Kamara, Jordan, Boyd, Breckon, Davis, Fritz, Hawkes, Jones, Patton, Powell, Turner, Williams and GEO filed the Motions to Dismiss currently before the Court.  (ECF Nos. 103, 105, 109, 113.)[2]  Plaintiff timely responded, and Defendants replied, rendering these Motions ripe for review.  (ECF Nos. 117, 118, 121, 122, 124, 125, 127, 128.)[3]

## II.    STANDARD OF REVIEW

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the Court's jurisdiction over the subject matter of the complaint.  A challenge to subject matter jurisdiction can be presented in either of two forms:  (1) a facial challenge that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, or (2) a motion to dismiss

---

[2]    Additionally, Defendants Jordan, Boyd, Breckon, Davis, Fritz, Hawkes, Jones, Patton, Powell, Turner, Williams and GEO filed an answer to Plaintiff's Third Amended Complaint. (ECF No. 111.)

[3]    Defendants have also filed various Motions and Notices requesting a hearing on their Motions to Dismiss.  (ECF Nos. 115, 123, 126, 129.)  The undersigned finds the parties' briefing sufficient to resolve these Motions on the papers.  The Court will therefore DENY these requests.  (ECF Nos. 115, 123, 126, 129.)

because the plaintiff cannot establish subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In either case, the plaintiff bears the burden of proof to establish jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. The facts alleged must also be sufficient

7

to "state all the elements of [any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

## III.    ANALYSIS

The Court begins by addressing Kamara's argument that Plaintiff lacks standing to bring this suit.  Next, the Court turns to Plaintiff's Section 1983 claims, followed by several Defendants' assertions of qualified and sovereign immunity.  The Court proceeds to address Plaintiff's negligence and gross negligence claims against certain Defendants.  Finally, the Court resolves whether punitive damages are available and whether Plaintiff's medical claims are subject to a statutory damages cap as to Defendant Jordan.

### A.    Standing

The Court must first address the issue of whether Plaintiff possesses Article III standing. *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 715–16 (4th Cir. 2015) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–102 (1998) (recognizing that standing to maintain a suit implicates the court's jurisdiction to entertain a suit and is thus a threshold question to be resolved before the merits)).

#### 1.    Standard

To properly maintain a lawsuit in federal court, a plaintiff must allege that he or she has standing to bring that suit.  Standing requires plaintiff to demonstrate that "such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005).  The doctrine of standing is "an integral component of the case or controversy requirement." *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011).  The party seeking to invoke the jurisdiction of a federal court bears the burden

of establishing standing . *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).  To meet that

burden, a plaintiff must demonstrate three elements:  (1) that he has suffered an injury in fact that

is "concrete and particularized" and "actual or imminent"; (2) that the injury is fairly traceable to

the challenged conduct; and (3) that a favorable decision is likely to redress the injury.  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Generally, challenges to standing are addressed by a Rule 12(b)(1) motion to dismiss for

lack of subject matter jurisdiction.  *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir.

2009) (finding that the district court properly re-characterized a defendant's challenge to standing

from a motion to dismiss under Rule 12(b)(6) to a motion to dismiss under Rule 12(b)(1)).

When resolving a motion under Rule 12(b)(1), "the district court is to regard the pleadings as

mere evidence on the issue, and may consider evidence outside the pleadings without converting

the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647

(4th Cir. 1999).  Further, where a defendant has not provided evidence to dispute the veracity of

the jurisdictional allegations in the complaint, the court accepts facts alleged in the complaint as

true just as it would under Rule 12(b)(6).  *Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir.

2009).

Virginia's Death by Wrongful Act statute provides a cause of action for "[w]henever the

death of a person shall be caused by the wrongful act, neglect, or default of any person."  Va.

Code. § 8.01-50(A).  Given the death of the would-be plaintiff,  a wrongful death action may "be

brought by and in the name of the personal representative of such deceased person."  Va. Code.

§ 8.01-50(C).  In this context, the "personal representative" includes the "executor" or

"administrator" of a decedent's estate who has been qualified by a court to hold that

position.  Va. Code §§ 64.2-100, 1–234; *see also In re Woodley*, 777 S.E.2d 560, 563 (2015)

(concluding that the "personal representative" of the decedent "plays a pivotal role" in filing a wrongful death suit); *Ennis v. Poe*, 661 F. Supp. 3d 554, 560 (W.D. Va. 2023) (finding that, under Virginia law, a wrongful death suit may be brought by the administrator of the decedent's estate). Thus, a qualified personal representative has standing to file suit for harms suffered by the decedent.

### 2. Analysis

Kamara asserts that Plaintiff lacks standing to bring this suit for two reasons.[4] (ECF No. 104 at 2–5.) First, Kamara alleges that Plaintiff's appointment form provides her with a restricted grant of authority to act in Plaintiff's name, and that this authorization is limited to actions taken in accordance with the statutes listed on that form. (*Id.*) Significantly, Virginia Code § 64.2-519, the statutory provision setting forth that "[a] personal representative may sue or be sued (i) upon any judgment for or against the decedent, (ii) upon any contract of or with the decedent, or (iii) in any action for personal injury or wrongful death against or on behalf of the estate," does not appear on the authorization form. Va. Code § 64.2-519; (*id.*) Second, Kamara asserts that Virginia Code § 64.2-519 does not permit suits for violations of constitutional or civil rights, thus preventing Plaintiff from suing under § 1983. (*Id.* at 6–7.) The Court will address each argument in turn.

Kamara does not dispute that Plaintiff is properly qualified as the administrator of Hernandez's estate. *See* ECF No. 104-1 (Plaintiff's Certificate/Letter of Qualification). Instead, Kamara argues that Plaintiff's qualification certificate was issued "pursuant" to the seven statutes

---

[4]    Despite failing to cite Rule 12(b)(1), the Court will re-characterize Defendant Kamara's Motion as brought under that rule. *Pitt Cnty.*, 553 F.3d at 311 (finding that the district court properly re-characterized a defendant's challenge to standing from a motion to dismiss under Rule 12(b)(6) to a motion to dismiss under Rule 12(b)(1)).

listed underneath the letter's heading, thus limiting Plaintiff to filing suits under only those statutes. (ECF No. 104 at 2–5.) This argument fails for two reasons.

First, Kamara lists only one authority, *Antisdel v. Ashby*, 688 S.E.2d 163 (2010), in support of her argument, but this case is easily distinguished. (*Id.* at 2.) In *Antisdel*, the plaintiff's certificate of qualification stated that the plaintiff was appointed to "perform the duties of [administrator] for the purposes allowed in Virginia Code § 8.01-50." *Antisdel*, 688 S.E.2d at 165. As discussed above, Virginia Code § 8.01-50 creates a cause of action to sue for wrongful death. Va. Code § 8.01-50. Given the express limitation in the certificate of qualification, the Supreme Court of Virginia determined that the plaintiff could not, in addition to a wrongful death suit, also bring a survival action pursuant to Virginia Code § 8.01-25 et seq. Here, Plaintiff's certificate of authority includes no such limitation, stating that Plaintiff was "duly qualified in this court, under applicable provisions of law, as Administrator of the estate of" Hernandez. (ECF No. 104-1 at 1.) *Antisdel* therefore stands inapposite to this case.

Second, and contrary to Kamara's claim, Plaintiff's certification in no way suggests that her authority is either pursuant to or limited by the statutes listed underneath the letter's heading. Rather, Plaintiff's authorization stands "under applicable provisions of law." Such provisions include, but are not limited to, Virginia Code § 64.2-519, which provides that "[a] personal representative may sue or be sued (i) upon any judgment for or against the decedent, (ii) upon any contract of or with the decedent, or (iii) in any action for personal injury or wrongful death against or on behalf of the estate." Va. Code § 64.2-519. In addition, the text of the seven statutes listed underneath the document's heading is miniscule and contains no language suggesting that Plaintiff's appointment authority stands restricted to these statutes. If Plaintiff's authority as administrator of her deceased brother's estate was in fact limited, as Kamara

11

suggests, the Court would expect the document to say so.  It does not.  As a result, Kamara's first argument fails.

Next, Kamara argues that Plaintiff lacks standing to bring a constitutional claim under § 1983, because Virginia Code § 64.2-519 fails to provide for suits addressing civil rights violations.  (ECF No. 104 at 2.)  Kamara's assertion again fails.

As previously noted, Virginia Code § 64.2-519 provides that "[a] personal representative may sue or be sued (i) upon any judgment for or against the decedent, (ii) upon any contract of or with the decedent, or (iii) in any action for personal injury or wrongful death against or on behalf of the estate."  § 64.2-519.  Kamara appears to focus on section (iii), arguing that a § 1983 suit does not qualify as a personal injury or wrongful death suit, and thus cannot be raised in this context.  (ECF No. 104 at 6.)  Kamara's only citation in support of this argument is to *Grayson v. Peed*, 195 F.3d 692 (4th Cir. 1999), which she fails to explain and which the Court, upon its own review, concludes does not assist her argument.

Further, Kamara is correct that a § 1983 claim does not qualify as a personal injury or wrongful death suit.  *See, e.g., Miltier v. Beorn*, 696 F. Supp. 1086, 1088 (E.D. Va. 1988) (finding that "§ 1983 is not essentially a personal injury action.")  But such a fact does not preclude a plaintiff from simultaneously maintaining a wrongful death suit under Virginia law and a § 1983 claim under federal law.  *See, e.g., id.* (holding that "under Virginia law, a wrongful

death claim can peaceably coexist with a § 1983 claim").  Thus, Kamara's second argument also fails.

As a result, the Court will DENY Kamara's Motion to Dismiss for Lack of Standing. (ECF No. 103.)  Further, the Court will DENY AS MOOT the other Defendants' Motions for Joinder to Kamara's Motion.  (ECF Nos. 108, 112.)

**B.      Rule 8**

The Court next addresses Defendant Jordan's argument concerning Federal Rule of Civil Procedure 8, which mandates that pleadings contain a "short and plain statement" of the claim.  Fed. R. Civ. P. 8.  Jordan argues that Plaintiff's Third Amended Complaint violates Rule 8, because it mainly refers to Jordan as part of the "Provider Defendants" group, rather than individually.  (ECF No. 110 at 5–10.)

Although the Third Amended Complaint bears some length at 139 paragraphs across 26 pages, it contains a mostly orderly and chronological set of factual allegations before proceeding to the specific allegations underlying the eight counts that it states against 13 defendants.  With respect to Jordan, it specifically alleges that:  (a) Jordan was a licensed practical nurse and GEO employee at LCC; (b) Jordan was part of the medical staff that responded to Hernandez's emergency in the early morning of November 6, 2020; (c) Jordan helped transport Hernandez to the medical unit and did not immediately apply pressure to Hernandez's wounds; (d) Jordan was one of two nurses who applied pressure to Hernandez's wounds once he arrived in the medical unit; (e) Defendants, including Jordan, failed to administer intravenous fluid therapy to Hernandez; and (f) Defendants, including Jordan, failed to call 911 until after Hernandez lost consciousness.  (3d Am. Compl. ¶¶ 6, 26, 28, 31–32, 37.)  The Third Amended Complaint then

proceeds to identify the specific counts alleged against Jordan as one of the "Provider Defendants." (*Id.* 49–65; 89–130.)

While the Third Amended Complaint does not represent a model of clarity, the Court finds that it nonetheless satisfies Rule 8, which requires only that a pleading "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Jordan cites to *Gillespie v. Marriott Int'l, Inc.*, 2015 WL 2374610, at *1 (E.D. Va. May 18, 2015), where the court dismissed the plaintiff's complaint for failing to satisfy Rule 8. But this case proves easily distinguished, because in *Gillespie*, the complaint was a mere two pages and included no allegations regarding the defendants' liability. *Id.* at *3. Here, the factual allegations against Jordan are intelligibly set forth and provide ample notice for purposes of *Twombly* as to Plaintiff's various claims. And even though Jordan is, at times, referred to as one of the "Provider Defendants," such classification does not undermine or negate Plaintiff's specific allegations as to Jordan. The Court will therefore DENY Jordan's Motion to Dismiss as to her arguments based on Rule 8. *See Sosa v. Hill*, 2025 WL 864291, at *15 (E.D. Va. Mar. 19, 2025) (denying Motion to Dismiss based on Rule 8 despite plaintiff's complaint referring to defendants in groups).

### C.    Deliberate Indifference under § 1983 (Count Seven)

Plaintiff presents four versions of a § 1983 deliberate indifference claim under Count Seven: (1) medical needs claims, (2) delay in medical care claims, (3) a supervisory-liability claim, and (4) a *Monell* claim for a policy or custom of deliberate indifference to serious medical needs. The Court will address the law and facts for each of Plaintiff's constitutional claims in turn.

### 1.      Medical Needs Claims

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To that end, "[a] prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021).

A deliberate-indifference claim has an objective and subjective element. *Farmer*, 511 U.S. at 834–37. The objective prong requires the inmate to demonstrate a "substantial risk of serious harm." *Id.* at 834. The subjective prong requires the inmate to show that the prison official knew about this substantial risk and recognized that their response to that risk was inadequate. *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). These requirements mean that, even where they possess knowledge of the risk, an official who "responded reasonably to the risk" cannot be found liable under the Eighth Amendment. *Farmer*, 511 U.S. at 844.

Plaintiff alleges two variations of her claim that Provider Defendants, Correctional Officer Defendants and The GEO Group's employees and agents were deliberately indifferent to Hernandez's medical needs: first, that these Defendants were deliberately indifferent to Hernandez's risk of sexual assault after his report of rectal bleeding and blood in his urine, which allegedly caused him to commit suicide (assuming that he did, in fact, attempt suicide); and second, that Defendants' failure to administer intravenous fluid therapy while responding to

Hernandez's profuse bleeding constituted deliberate indifference to his medical needs.[5]  Only Defendants Jordan and Kamara challenge Plaintiff's deliberate indifference to medical needs claims.[6]  (ECF No. 106 at 3–8; ECF No. 110 at 14–17.)  Thus, the Court will examine these claims for purposes of dismissal only as to Defendants Jordan and Kamara.

### a.      Objective Prong

Under the objective prong, a plaintiff must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that constitutes "part of the penalty that criminal offenders pay for their offenses against society."  *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).  "In order to demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions."  *De'lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).  In the context of a claim for deliberate indifference to medical needs, the objective prong requires a plaintiff to establish "that his medical condition was objectively serious — that is, one that has been diagnosed by a physician as mandating

---

[5]      Because Plaintiff's remaining allegations involve the timing of the care administered to Hernandez on the night that he died — including when pressure was applied to his wounds and when Defendants called 911 — the Court will analyze these allegations separately as a delay in medical care claim.  (ECF No. 106 at 5–6; ECF No. 110 at 9.)

[6]      Defendants Breckon, GEO, Williams, Powell, Patton, Hawkes, Boyd, Turner, Jones, Davis and Fritz's Motion to Dismiss brief (ECF No. 114) and subsequent reply brief (ECF No. 128) provide argument that Count Seven should be dismissed against Breckon and GEO; the Court addresses these arguments below (*See infra* Section III.C.3–4).  However, aside from a passing mention that the Court should dismiss Count Seven "in full," Defendants offer no argument as to why Count Seven should not proceed as to Defendants Williams, Powell, Patton, Hawkes, Boyd, Turner, Jones, Davis and Fritz.  (ECF No. 114 at 11; ECF No. 128 at 6.)  As a result, the Court will not consider dismissal as to these Defendants.  *See, e.g.*, *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) ( "[C]ontentions not raised in the argument section of the opening brief are abandoned.").

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hixson*, 1 F.4th at 302.

Plaintiff alleges that on the day before Hernandez's death, he reported that "he was bleeding from his rectum, and blood was found in his urine." (3d. Am. Compl. ¶ 41.) In response to Hernandez's report, Plaintiff alleges that Defendants prescribed Hernandez Pepto Bismol but "failed to investigate the matter further to determine a potential cause of the bleeding from [] Hernandez's rectum." (*Id.* ¶ 42.) Specifically, Plaintiff asserts that Defendants should have investigated "the possibility that [Hernandez] had been sexually assaulted." (*Id.*)

The Court finds that Hernandez's reported conditions were not "objectively serious" for purposes of a deliberate indifference claim, because he was not diagnosed with a condition that mandated treatment and his condition was not "so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hixson*, 1 F.4th at 302. The Court acknowledges that persistent reports of rectal bleeding and blood found in urine could rise to the level of "objectively serious." However, a single report, without additional serious symptoms, fails to rise to that level. *Cf. Perry v. Meade*, 728 F. App'x 180, 181 (4th Cir. 2018) (finding that defendant's repeated complaints of intense pain and rectal bleeding and dizziness constituted an objectively serious medical condition); *Abraham v. McDonald*, 493 F. App'x 465, 466 (4th Cir. 2012) (concluding that defendant's cysts, which caused repeated instances of abdominal pain, vomiting, difficulty eating, difficulty urinating and blood in the urine, constituted an objectively serious medical condition); *Dallas v. Craft*, 2022 WL 2079312, at *11 (E.D. Va. June 9, 2022) (finding that defendant's "consistent pleas for help and complaints about severe stomach pain, nausea, cramping, excessive sweating, vomiting, and, at times, inability to walk" satisfied the

17

objective prong, because defendant's medical need would be obvious even to a lay person).[7] Because Plaintiff fails to satisfy the objective prong as to this version of her medical needs claim, the Court need go no further in its analysis.[8]

As to Plaintiff's second version of her medical needs claim, discovering Hernandez lying in a pool of blood certainly constitutes a serious medical condition that would have been "so obvious" to a lay person that medical attention was required. *See, e.g., Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) ("[E]ven a lay person would infer from [inmate's] medical room collapse that he was in need of medical attention.")  As a result, the Court proceeds to address the subjective prong as to whether Jordan and Kamara proved deliberately indifferent to Hernandez's medical needs when they failed to administer intravenous fluid therapy in response to his loss of blood.

### b.    Subjective Prong

To satisfy the subjective element of a claim of deliberate indifference to medical needs, a plaintiff must establish that the defendant "subjectively knew of and disregarded an excessive risk to the inmate's health or safety." *Hixson*, 1 F.4th at 302.  "That is a higher standard for

---

[7]    Further, Plaintiff offers no authority for the proposition that one complaint of rectal bleeding and blood in urine, without any mention of sexual assault, should have caused Defendants to investigate and perform a rape kit.

[8]    Even if Plaintiff had satisfied this element, her claim would have failed at the subjective prong.  This is because Plaintiff does not allege that Hernadez told anyone about the suspected sexual assault, let alone that Kamara or Jordan knew of such a claim.  In *Grayson v. Peed*, a prisoner was the only one aware of his enlarged heart and congestive heart failure.  He did not inform the prison officials.  In finding that the inmate failed to satisfy the subject prong of a deliberate indifference claim, the Fourth Circuit concluded that "the law cannot demand that officers be mind readers."  *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).  Here, the same logic would apply.  Kamara and Jordan cannot be deliberately indifferent to what they do not know of in the first place.  Because they did not know of suspected sexual assault, the Court finds that they could not have been subjectively deliberately indifferent towards the consequences of said assault.

culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  To establish an Eighth Amendment violation, "it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction."  *Id.*

The mere fact that an inmate received "some treatment" for a condition does not necessarily mean that the inmate received "constitutionally adequate treatment."  *De'Lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013).  However, mere disagreements between an inmate and a physician over the inmate's proper medical care "fall short of showing deliberate indifference."  *Jackson*, 775 F.3d at 178.  Instead, to find a defendant liable, "the treatment given must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Hixson*, 1 F.4th at 303.

"Deliberate indifference is a very high standard — a showing of mere negligence will not meet it."  *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough.  The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate."  *Johnson*, 145 F.3d at 168

(citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (requiring facts demonstrating that the defendant actually drew the inference of the risk of harm).

Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee*, 372 F.3d at 303 (quoting *Rich*, 129 F.3d at 340 n.2).

Against this backdrop, the Court finds that Plaintiff fails, even at the motion to dismiss stage, to state a claim of deliberate indifference to medical needs against Kamara and Jordan for failing to administer intravenous fluid therapy. While their provision of emergency care to Hernandez may not have been perfect, their alleged conduct fails to demonstrate that either Defendant "subjectively knew of and disregarded an excessive risk to [Hernandez's] health or safety." *Hixson*, 1 F.4th at 302 (quoting *Jackson*, 775 F.3d at 178).

Plaintiff repeatedly alleges that intravenous fluid therapy constitutes "routine treatment for cases of hemorrhage." (3d. Am. Compl. ¶¶ 32, 51, 61, 91, 103.) The Court finds that this allegation constitutes a disagreement over treatment, which is not actionable as a deliberate indifference claim. *See e.g., Jackson*, 775 F.3d at 178 (holding that a doctor's misdiagnosis and change in inmate's treatment, though perhaps a grave mistake, constituted a disagreement between the prisoner and physician over proper medical care and was thus not actionable); *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) ("The mere possibility of a change in treatment based on the professional judgment of a prison's medical team simply does not give rise to an Eighth Amendment violation."); *Parrish ex rel. Lee*, 372 F.3d at 309 ("As we often have made clear, the question in deliberate indifference cases is not whether the officials could

20

have taken additional precautions — almost invariably, with the benefit of 20/20 hindsight, there are additional precautions that could have been taken.").

Further, the care that Hernandez received — application of pressure to his wounds — was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hixson*, 1 F.4th at 303. Plaintiff simply disagrees with this course of treatment. Because such allegations cannot establish a deliberate indifference claim, Plaintiff's disagreement with the care administered to Hernandez fails to clear the "high bar" of a constitutional claim. *Iko*, 535 F.3d at 241.

In sum, Plaintiff's claims for deliberate indifference to Hernandez's medical needs fail against both Kamara and Jordan. Accordingly, the Court will GRANT Jordan and Kamara's Motions to Dismiss as to this claim. Though because Defendant Williams and Correctional Officer Defendants fail to challenge Plaintiff's claims that their conduct proved deliberately indifferent to Hernandez's medical needs, these claims will proceed.

### 2.    Delay in Care Claim

Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976). Such deliberate indifference may be demonstrated by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104–05. Though "[a]n Eight Amendment violation only occurs [] if the delay results in some substantial harm to the patient." *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008).

A claim for a delay in medical care requires that Plaintiff plausibly plead both objective and subjective elements. *Estelle*, 429 U.S. at 106. Objectively, Plaintiff must show that the medical need for which Hernandez was treated was sufficiently serious. *Formica v. Aylor*, 739

F. App'x 745, 754–55 (4th Cir. 2018). Moreover, a delay in medical care claim also requires that Plaintiff demonstrate that "the delay result[ed] in some substantial harm [Hernandez], such as a marked exacerbation of the prisoner's medical condition or frequent complaints of severe pain." *Id.* at 755. And subjectively, Plaintiff "must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner, that he did in fact draw that inference, and that he then disregarded that risk." *Farmer*, 511 U.S. at 837. Without satisfying both elements, a claim alleging that a delay in medical care violated a prisoner's Eighth Amendment right fails.

Here, Plaintiff alleges a claim of delayed medical care against Provider Defendants and Correctional Officer Defendants. Specifically, Plaintiff alleges that Defendants' failure to immediately administer care, but rather transfer Hernandez to the medical unit, and immediately call 911 constituted a delay in medical care. As with Plaintiff's claim for deliberate indifference to Hernandez's medical needs, only Defendants Jordan and Kamara challenge this claim. Thus, the Court will examine this claim for purposes of dismissal only as to Defendants Jordan and Kamara.

### a.      Objective Prong

Plaintiff's delay-in-care claim satisfies the objective prong. First, the Court determined above that Hernandez's profuse bleeding constituted a sufficiently serious medical need. *See supra* Section III.B.ii.a. Thus, the Court need only examine whether Plaintiff sufficiently pleaded that the alleged delay in care resulted in substantial harm to Hernandez. Substantial harm can be demonstrated where the delay caused a "marked exacerbation" of the inmate's condition. *Formica*, 739 F. App'x at 755. It can likewise be shown simply by demonstrating that the delay "unnecessarily prolonged an inmate's pain." *Id.*

22

On the night in question, Kamara and Jordan arrived at Hernandez's cell "where they found him still responsive, and even talking, while continuing to bleed profusely." (3d Am. Compl. ¶ 26.) While transporting Hernandez to the medical unit, he remained conscious but continued to bleed. (*Id.* ¶ 28.) Once in the medical unit, Jordan and Kamara applied pressure to Hernandez's wounds. (*Id.* ¶ 29.) Hernandez also remained conscious and speaking for a time in the medical unit. (*Id.* ¶ 33.) Plaintiff alleges that "[i]t was not until [] Hernandez was completely unresponsive and without a pulse that any of the Defendants called 911." (*Id.* ¶ 37.) On these facts, the Court finds that Hernandez's progression from a state of consciousness to an unconscious state constitutes a "marked exacerbation" in satisfaction of a "substantial harm." *Formica*, 739 F. App'x at 755. Thus, the Court proceeds to analyze whether Plaintiff's claims satisfy the subjective prong.

### b.    Subjective Prong

To satisfy the subjective element of a delay in care claim, Plaintiff must demonstrate that Jordan and Kamara deliberately delayed or interfered with Hernandez's medical care to a degree that demonstrates disregard of the excessive risk that Plaintiff's profuse bleeding posed to his health. *Formica*, 739 F. App'x at 757. That delay must also be prompted by "obduracy and wantonness, not inadvertence or error in good faith," before liability may be imposed. *Whitley v. Albers,* 475 U.S. 312, 319 (1986). This inquiry is fact-bound, "subject to demonstration in the usual ways, including from circumstantial evidence." *Farmer*, 511 U.S. at 842. Where the risks of delay are obvious, the Court may conclude that a defendant knew of the risk based on that fact alone. *Id.* At bottom, "when a medical professional of a jail facility knows of a serious medical need, the Eighth Amendment requires reasonable action." *Formica*, 739 F. App'x at 757; *see also Farmer,* 511 U.S. at 844 (holding that "prison officials who actually knew of a substantial

risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

Plaintiff fails to make this showing.  The Court looks first to Plaintiff's claim concerning the delayed application of pressure to Hernandez' wounds.  Kamara and Jordan arrived at Hernandez's cell within three minutes of being alerted.  (3d Am. Compl. ¶¶ 26, 28.)  Such a swift reaction time does not support an inference that Defendants deliberately delayed or interfered with the risks that Hernandez faced.  The medical team then transported Hernandez to the medical unit and began to administer care.  (*Id.*)  This process, which required navigating a staircase, took approximately ten minutes.  (*Id.*)  Once they arrived in the medical unit, Jordan and Kamara applied pressure to Hernandez's wounds in an attempt to stop the bleeding.  (*Id.* ¶ 31.)

Plaintiff argues that Defendants' decision not to apply pressure immediately, but to wait instead until they arrived in the medical unit, supports a finding of deliberate indifference.  (ECF No. 110 at 8–9.)  The Court disagrees.  Defendants' decision to transport Hernandez to a secure location with adequate space and medical equipment constitutes a reasonable calculation.  In light of the need to transport Hernandez, the Court finds Defendants' ten-minute delay in applying pressure reasonable and in no way demonstrative of a disregard of excessive risk.

Further, Plaintiff's delay in care claim is unlike that where a medical professional initially refused to treat an inmate, thereby delaying treatment, which typically survives a motion to dismiss.  *See, e.g., Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005) (finding that a nurse turning away an inmate with severe chest pains and instructing that the inmate return in the morning resulted in an unconstitutional delay in care); *Dallas*, 2022 WL 2079312, at *14 (finding that a nurse observing an inmate's severe symptoms for six hours before contacting a doctor

24

constituted an unconstitutional delay); *cf. Boley v. Armor Corr. Health Servs., Inc.*, 2022 WL 905219, at *8 (E.D. Va. Mar. 28, 2022) (finding that nurse did not unconstitutionally delay treatment when she checked the inmate's vitals and scheduled him for a follow-up appointment the next day).  Instead, here, Hernandez received medical care within twelve minutes of medical professionals knowing of his condition.  (3d. Am. Compl. ¶ 29.)

Plaintiff's speculative claim that Jordan and Kamara might have been able to apply pressure to Hernandez's wounds as they transported him up the stairs to the medical unit fails to change that calculus.  *See, e.g., Parrish ex rel. Lee*, 372 F.3d at 309 ("As we often have made clear, the question in deliberate indifference cases is not whether the officials could have taken additional precautions — almost invariably, with the benefit of 20/20 hindsight, there are additional precautions that could have been taken — but whether they 'disregarded an excessive risk to . . .  health or safety.'").  Plaintiff's claims are more akin to medical malpractice claims, which "will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178.   For all these reasons, Jordan and Kamara's failure to immediately apply pressure to Hernandez's wounds cannot support a delay in care claim.

Plaintiff's claim concerning Defendants' delay in calling 911 yields the same outcome. Plaintiff asserts that "not one of the Provider Defendants or the Correctional Officer Defendants called 911 until [] Hernandez was dead — over 40 minutes after [] Jordan [and Kamara] discovered him bleeding profusely."  (ECF No. 117 at 5; ECF No. 124 at 9.)  On these facts, deliberate indifference exists if Kamara and Jordan "had no justification for their delay." *Hawkins v. Allen*, 743 F. Supp. 3d 765, 777 (E.D. Va. 2024).

Here, such justification exists.  First, Jordan and Kamara were actively caring for Hernandez's acute medical needs by applying pressure to Hernandez's wounds while in the

medical unit.  (3d Am. Compl. ¶ 31.)  In such instances, reasonable actions undermine a deliberate indifference claim.  *See e.g., Farmer,* 511 U.S. at 844 (holding that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted").  Caring for Hernandez's bleeding while relying on others to decide whether and when to call 911 is certainly reasonable.[9]

Second, as Plaintiff concedes, Hernandez "was conscious and responsive for at least 35 minutes after discovery."  (3d Am. Compl. ¶ 36.)  Given this fact, Plaintiff's claim that Defendants' decision to hold off on calling 911 was unreasonable to the level of constituting deliberate indifference fails to persuade the Court.  When and whether to call 911 while a patient is awake and conversant constitutes a medical treatment judgment, for which the benefit of hindsight may always counsel a different decision.  *See Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)) (rejecting as "impermissible 20/20 hindsight" the contention that officers should have taken a detainee to a medical facility earlier).[10]  "[W]hen a medical professional of a jail facility knows of a serious medical need, the Eighth Amendment requires reasonable action."  *Formica*, 739 F. App'x at 757.  Here, Defendants Jordan and Kamara behaved reasonably.  Thus, Jordan and Kamara's failure to immediately call 911 cannot support a deliberate indifference claim based on delay in care.  *See also Ruark v. Drury*, 21 F.3d 213, 217 (8th Cir. 1994) ("[I]t cannot

---

[9]    Plaintiff notes that "[t]here is no evidence to suggest that Defendant Kamara [or Jordan] was the one who called 911 forty-four minutes after [they] arrived at [] Hernandez's cell."  (ECF No. 117 at 5 n.7; ECF No. 127 at 8 n.5.)

[10]    Further, while Plaintiff asserts that "it was obvious that the staff was not equipped to render adequate aid to Mr. Hernandez," she provides no support for this contention.  (ECF No. 127 at 4.)  The Courts treats this allegation as conclusory and thus affords it no weight at this stage.

be said, as a matter of law, that a twenty-minute delay in securing assistance to have an ambulance called, in and of itself, constitutes obduracy and wantonness."); *cf. Dallas*, 2022 WL 2079312, at *14 (finding that a six-hour delay in facilitating emergency medical transport constituted a delay in medical care sufficient to make out a deliberate indifference claim).

In sum, Plaintiff's delay in care claim fails against both Jordan and Kamara under both theories presented.  Accordingly, the Court will GRANT Jordan and Kamara's Motions to Dismiss as to this claim.  Though because Defendant Williams and Correctional Officer Defendants fail to challenge Plaintiff's claims that their conduct proved deliberately indifferent by delaying Hernandez's medical care, this claim will proceed against them.

### 3.    Supervisory-Liability Claim

The Court construes Plaintiff's complaint to assert a § 1983 supervisory liability claim against Breckon.  (3d. Am. Compl. ¶ 125) ("Breckon knew that the failure to . . . supervise [] GEO's employees and agents exposed [] Hernandez to substantial risk of harm").  Breckon argues that this claim must be dismissed, asserting that Plaintiff's allegation is conclusory and fails to assert "that Breckon knew of any subordinate's conduct, let alone conduct that posed a pervasive and unreasonable risk of constitutional injury to [] Hernandez."  (ECF No. 114 at 7–8.)  The Court agrees.  For the reasons set forth below, because Plaintiff fails to allege sufficient facts to support her supervisory liability claim against Breckon, the Court will GRANT Breckon's Motion to Dismiss as to Count Seven.[11]

Liability under § 1983 cannot be predicated on a theory of respondeat superior.  *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  Rather, supervisors "are liable in their

---

[11]    Breckon also argues that Plaintiff's § 1983 claims against him are time barred.  (ECF No. 114 at 10–11.)  Since Plaintiff's claim fails on the merits, the Court need not address Defendant's statute of limitations argument.

individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms." *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009). A claim for supervisory liability under § 1983 requires a plaintiff to plausibly allege three elements: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) the supervisor's response was so inadequate as to show deliberate indifference or tacit authorization; and (3) there was an affirmative causal link. *Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022).

To satisfy the first element, a plaintiff must show that the conduct "poses a pervasive and unreasonable risk," meaning that "the conduct is widespread, or at least has been used on several different occasions." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Under the second element, a plaintiff must again establish that the supervisor failed to act "in the face of documented widespread abuses." *Id.* The third element requires the plaintiff to demonstrate an "affirmative causal link," encompassing cause in fact and proximate cause, between the supervisor's inaction and the harm suffered by the plaintiff. *Id.* In the context of a case concerning disregard of a detainee's medical needs, to satisfy *Shaw*'s test, a plaintiff must plausibly allege that defendants "knew, or should have known, that their subordinates routinely ignored the medical needs of inmates, and that the supervisors' subsequent response to these offenses — if any — proved glaringly insufficient." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990).

Here, Plaintiff wholly fails to state a supervisory liability claim against Breckon. First, while Plaintiff alleges that other inmates at LCC died in 2021 and 2022, Plaintiff fails to allege that these deaths resulted from the same or similar conduct that Plaintiff claims caused

Hernandez's death.  (3d Am. Compl. ¶ 46.)  Thus, Plaintiff does not state how the alleged

wrongful conduct proved "widespread, or at least has been used on several different occasions."

*Shaw*, 13 F.3d at 799.  As to the second element, Plaintiff again fails to allege how Breckon

failed to act "in the face of documented widespread abuses."  *Id.*  Instead, Plaintiff merely lodges

conclusory allegations, without evidentiary support, that Breckon "fail[ed] to adequately . . .

supervise Lawrenceville Correctional Center's employees" without alleging a factual basis to

support a finding that such failures occurred in other instances.  (3d Am. Compl. ¶ 47.)  Finally,

as to the third element, Plaintiff again offers only a conclusory allegation that Breckon's failure

to supervise "caused [] Hernandez's death."  (*Id.*)  As the Supreme Court has repeatedly

cautioned, such formulaic and threadbare allegations are insufficient to state a claim.  *Iqbal*, 556

U.S. at 678; *see Sosa*, 2025 WL 864291, at *16 (granting motion to dismiss § 1983 claims for

supervisory liability where the plaintiff failed to allege past incidents of wrongful behavior);

*Wiggins v. Queensberry*, 222 F. Supp. 3d 490, 502 (E.D. Va. 2016) (granting motion to dismiss

where the plaintiff failed "to allege *any* facts indicating that there were past incidents of

wrongful behavior" or that the defendant "knew about any past misconduct or tendency towards

misconduct").  Accordingly, the Court will GRANT Breckon's Motion to Dismiss with respect

to the supervisory liability claims against him.

### 4.    Section 1983 *Monell* Claim

Plaintiff asserts two versions of a § 1983 municipal liability claim against GEO, based on

(1) GEO's alleged failure to train its employees and agents and (2) a persistent policy or custom

at GEO, as evidenced by numerous inmate deaths, "that deprives inmates of their lives."  (3d

Am. Compl. ¶ 125; ECF No. 127 at 5.)  Because Plaintiff fails to allege sufficient facts to

support her *Monell* claim under either theory, as explained more fully below, the Court will GRANT GEO's Motion to Dismiss as to Count Seven.

Plaintiffs may assert claims against local government entities under § 1983 for the unconstitutional actions of their employees where these harms are directly attributable to the entity. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The Fourth Circuit observed that a private entity may act under color of law for purposes of § 1983 when it "exercise[s] powers that are traditionally the exclusive prerogative of the state." *Conner v. Donnelly*, 42 F.3d 220, 224 (4th Cir. 1994). "The provision of medical services to inmates" falls squarely within that category. *Id.*; *see also West v. Atkins*, 487 U.S. 42, 56 (1988) (recognizing that a state has a "constitutional duty to provide adequate medical treatment to those in its custody").

*Monell* liability attaches only where the entity harms the plaintiff "through an official policy or custom."[12] *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (citing *Monell*, 436 U.S. at 690–91)). A plaintiff may establish a policy or custom by looking to: (1) express ordinances and regulations; (2) affirmative decisions of final policy makers; (3) omissions by final policy makers that "manifest deliberate indifference to the rights of citizens," or (4) practices that are so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 218. Under option four, courts will not infer such a policy or custom merely from inaction in the face of isolated constitutional deprivations by employees. *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984). Nor will "isolated incidents of unconstitutional conduct" establish such a custom or

---

[12]    Entities cannot be held vicariously liable under § 1983 on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.

practice; rather, "numerous particular instances" of unconstitutional conduct are required. *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003).

*Monell* liability can also be based on an entity's failure to train its officers where such failure reflects a deliberate or conscious choice not to train, amounting to "deliberate indifference to the rights of [] citizens." *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000). To prevail on a failure to train claim, plaintiffs must allege (1) facts revealing the nature of the training, (2) that the training (or lack thereof) was a deliberate choice and (3) that the employee conduct at issue resulted from the training (or lack thereof). *Id.* A plaintiff sufficiently alleges a failure to train if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers [] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). To make such a showing, plaintiffs ordinarily must establish "[a] pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

As an initial matter, Plaintiff alleges that GEO contracted with VDOC to operate LCC, the only privately run prison in the Commonwealth of Virginia. (3d Am. Compl. ¶ 5.) Despite GEO's status as a private corporation, its actions are subject to § 1983, because "the principles of § 1983 municipal liability articulated by *Monell* and its progeny apply equally to a private corporation that employs" individuals working in prisons. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999).

The Court first considers Plaintiff's failure to train claim. Plaintiff does not allege any facts concerning the actual training that GEO provided to its LCC staff. This Court has recognized, however, that the "most common way to plead a failure to train claim is to allege a pattern of similar constitutional violations by untrained employees." *Lee v. City of Richmond*,

31

2013 WL 1155590, at *7 (E.D. Va. Mar. 19, 2013).  In such instances, the "need for more or different training" is sufficiently obvious to permit an inference of deliberate indifference on the part of the policy makers.  *City of Canton*, 489 U.S. at 390.  Yet, as the Court already discussed in the context of Plaintiff's supervisory liability claims, Plaintiff fails to plead any plausible connection between deaths of other inmates at LCC and Hernandez's death.  First, the purported "pattern" of deaths at LCC that Plaintiff discusses occurred, in part, as a result of drug overdoses, not suicides or inadequate responses to medical emergencies.  (3d Am. Compl. ¶ 46.)  Further, beyond alleging that eight inmate deaths resulted from drug overdoses, Plaintiff pleads no facts suggesting that inmate deaths resulted from any actions on the part of LCC staff.  As a result, the Court cannot ascertain a "pattern of similar constitutional violations by untrained employees." *Lee*, 2013 WL 1155590, at *7.

Further, as GEO notes in its Motion, the custodial deaths upon which Plaintiff's arguments rests all occurred *after* Hernandez's death.  (ECF No. 114 at 4–5.)  Thus, even if the deaths were sufficiently related to Hernandez's — a finding that the factual allegations before the Court do not support — they would fail to establish that the "need for more or different training" proved sufficiently obvious at the time of Hernandez's death to permit an inference of deliberate indifference.  *City of Canton*, 489 U.S. at 390.  Plaintiff's failure to train claim therefore fails.

As to Plaintiff's custom or policy argument, Plaintiff appears to assert that GEO harmed Hernandez by its practices that were so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Carter*, 164 F.3d at 218 (citing *Monell*, 436 U.S. at 690–91).[13]  Plaintiff again supports her argument with evidence of

---

[13]    Plaintiff does not assert an argument pursuant to the other three theories available for proving an official custom or policy under *Monell*.  In fact, Plaintiff's Third Amended Complaint and her responses fail to make any mention of express ordinances and regulations, or any final

other inmate deaths at LCC. Specifically, Plaintiff alleges that "[a]t this stage of litigation, Plaintiff has clearly provided enough facts to raise the inference that a custom or policy of The GEO Group, Inc. resulted in a deprivation of [] Hernandez's rights above the speculative level, as required by" *Monell* and *Twombly*. (ECF No. 127 at 5.) The Court disagrees. As previously noted, Plaintiff fails to establish how the cited custodial deaths at LCC, which occurred after the incident in question here, bear any connection to the alleged wrongs that led to Hernandez's death. Plaintiff's arguments to this point prove, at best, conclusory. As a result, Plaintiff fails to plausibly plead a claim of *Monell* liability against GEO. The Court will therefore GRANT GEO's Motion to Dismiss with respect to the *Monell* claims against it.

### D.    Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from civil liability where "their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has established a two-step inquiry in which courts must determine: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts may perform that inquiry in either order. *Id*. at 236.

Here, Jordan and Kamara assert that they are entitled to qualified immunity. (ECF No. 106 at 8–9; ECF No. 110 at 17–18.) Though because the Court determined that Plaintiff failed to state a violation of a constitutional violation against either Jordan or Kamara, the Court need not

---

policy maker. Thus, the Court need not analyze Plaintiff's official custom or policy argument under any of these theories.

analyze whether qualified immunity applies.  Thus, the Court will DENY AS MOOT

Defendants' Motions to the extent that they assert qualified immunity.

> ### E.    Sovereign Immunity

Defendants Jordan and Kamara raise the doctrine of sovereign immunity as a defense to

Plaintiff's negligence claims against them.  (ECF No. 106 at 9–12; ECF No. 110 at 18–20.)

Sovereign immunity precludes suits against state officials sued in their official capacities.  *Est. of*

*Cuffee By & Through Cuffee v. Newhart*, 2010 WL 11519540, at *8 (E.D. Va. Apr. 2, 2010),

*aff'd sub nom. Est. of Cuffee ex rel. Cuffee v. Newhart*, 498 F. App'x 233 (4th Cir. 2012); *see also*

*Kitchen v. Upshaw*, 286 F.3d 179, 183–84 (4th Cir. 2002) ("The Eleventh Amendment limits the

Article III jurisdiction of the federal courts to hear cases against States and state officers acting in

their official capacities.").  However, sovereign immunity does not preclude claims against

officials sued in their individual capacity.  *Id.*

Here, Plaintiff's Third Amended Complaint fails to allege whether Jordan and Kamara

are sued in their individual and/or official capacities.  (3d. Am Compl. ¶¶ 6, 7.)  In such cases,

the Fourth Circuit instructs courts to "examine the nature of the plaintiff's claims, the relief

sought, and the course of proceedings to determine whether a state official is being sued in a

personal capacity."  *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).  In determining whether a

complaint is brought against a defendant in their individual capacity, a court should also consider

the following factors:  (1) "the plaintiff's failure to allege that the defendant acted in accordance

with a governmental policy or custom, or the lack of indicia of such a policy or custom on the

face of the complaint;" (2) "a plaintiff's request for compensatory or punitive damages, since

such relief is unavailable in official capacity suits;" and (3) "[t]he nature of any defense raised in

response to the complaint," including a defense of qualified immunity, which remains available

34

only in a personal capacity suit. *Id.* In making this determination, "the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.*

None of the parties addresses the fact that Plaintiff failed to allege in what capacity she is suing Defendants Jordan and Kamara. Despite this failure, Plaintiff's intent to hold Jordan and Kamara personally liable "can be ascertained fairly" once the *Biggs* factors are applied to the Third Amended Complaint. *Biggs*, 66 F.3d at 61. First, Plaintiff's Third Amended Complaint does not allege that Jordan or Kamara acted in accordance with a policy or custom, which suggests that Plaintiff sued Jordan and Kamara in their individual capacities. Second, the Third Amended Complaint seeks compensatory and punitive damages, which can only be sought in personal capacity suits. Though the third factor proves largely a wash, given that Jordan and Kamara asserted both a qualified immunity defense (which would apply only if they were sued in their individual capacities) and a sovereign immunity defense (which would apply only if they were sued in their official capacities), the first two *Biggs* factors persuade the Court that Plaintiff intended to sue Jordan and Kamara in their individual capacities only. Thus, Jordan and Kamara's sovereign immunity defenses do not apply to the claims against them, and the Court will disregard them accordingly.[14]

---

[14]    The Court notes that Defendant Breckon, whom Plaintiff sues in his official capacity, (3d Am. Compl. ¶ 19), fails to assert a sovereign immunity defense. Thus, the Court need not consider whether such a defense stands available to him.

F.    **Wrongful Death / Survival Actions**

Plaintiff alleges state law claims for wrongful death pursuant to Virginia Code § 8.01-50 *et seq.* and, in the alternative, survival claims pursuant to Virginia Code § 8.01-25 *et seq.*[15] (3d Am. Compl. ¶¶ 49–110.)  Specifically, Plaintiff asserts negligence claims for wrongful death against Provider Defendants, Correctional Officer Defendants and GEO (Counts One and Three), negligence claims for survival against Provider Defendants, Correctional Officer Defendants and GEO (Counts Two and Four), a gross negligence claim for wrongful death against all Defendants (Count Five) and a gross negligence claim for survival against all Defendants (Count Six).

To plead a claim for negligence under Virginia law, a plaintiff must allege (1) the existence of a legal duty, (2) a breach of that duty, (3) proximate causation and (4) damages to the plaintiff.  *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003).  Ordinary negligence "involves the failure to use the degree of care that an ordinarily prudent person would exercise under similar circumstances to avoid injury to another."  *Cowan*, 603 S.E.2d at 918.  Gross negligence, by contrast, constitutes "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person."  *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (quoting *Cowan*, 603 S.E.2d at 918).  It requires "a degree of negligence that would shock fair-minded persons."  *Doe v. Baker*, 857 S.E.2d 573, 587 (Va. 2021).  The standard is one of "indifference, not inadequacy."  *Fijalkowski v. Wheeler*, 801 F. App'x 906, 914 (4th Cir. 2020) (citing *Elliott*, 791 S.E.2d at 732).

---

[15]    A plaintiff may plead a claim under Virginia's wrongful death statute while pleading, in the alternative, a survival action claim concerning the same underlying conduct.  *Sosa*, 2025 WL 864291, at *8.  While plaintiffs must ultimately elect one remedy, the proper time for such an election is "when the record sufficiently establishes that the personal injuries and the death arose from the same cause."  *Centra Health, Inc. v. Mullins*, 670 S.E.2d 708, 718 (Va. 2009).

Here, the Court limits its analysis to the claims that Defendants have challenged: (1) Plaintiff's negligence claims against Defendant Jordan (ECF No. 110 at 10–11); (2) Plaintiff's gross negligence wrongful death claims against Defendants Jordan and Breckon (ECF No. 110 at 11–14; ECF No. 114 at 5–6.); and (3) Plaintiff's gross negligence survival claims against the same two Defendants.[16] (ECF No. 110 at 11–14; ECF No. 114 at 5–6.) The Court will address each argument in turn.

### 1.    Negligence (Count One and Two) as to Defendant Jordan

Plaintiff alleges a claim of negligence against Defendant Jordan, who was part of the medical team that treated Hernandez in the early morning of November 6, 2020. Plaintiff alleges that Jordan, together with others, had a duty "to treat [Hernandez] in accordance with recognized and acceptable standards of medical care, health care, and/or nursing care and treatment." (*Id.* ¶ 51.) She further alleges that Jordan breached her duty when she (1) "fail[ed] to even attempt to stem [] Hernandez's blood loss for ten minutes after [her] discovery of him," (2) "fail[ed] to administer intravenous fluid therapy, which is routine treatment for cases of hemorrhage," and (3) "fail[ed] to call for emergency services capable of providing emergency and resuscitative care." (*Id.*) Furthermore, Plaintiff alleges that, "[a]s a direct and proximate cause of [Jordan's] negligence," Hernandez suffered damages and died. (*Id.* ¶¶ 53–54, 63.) Finally, Plaintiff alleges

---

[16]    Defendant Kamara's Memorandum in Support of her Motion to Dismiss challenges Plaintiff's claims of negligence and gross negligence exclusively on sovereign immunity grounds. (ECF No. 106 at 9–11.) As the Court explained, it will deny Kamara's Motion on these grounds. *See supra* Section III.D. Therefore, the Court will allow Counts One, Two, Five and Six to proceed against Defendant Kamara. While Kamara appears to challenge Plaintiff's claims of gross negligence (and, obliquely, ordinary negligence) against her on the merits in her reply brief, (ECF No. 122 at 5), these arguments were not set forth in her opening brief. The Court will therefore disregard them. *See Al-Hamdi*, 356 F.3d at 571 n.8 ( "[C]ontentions not raised in the argument section of the opening brief are abandoned.")

that she sustained a variety of damages due to the negligence of Jordan and the other Defendants. (*Id.* ¶¶ 55–56.)

Defendant Jordan challenges Plaintiff's allegations both generally and specifically as to her. First, Jordan argues that Plaintiff's allegations "cannot sustain a facially plausible wrongful death or negligence claim against [her]." (ECF No. 110 at 11.) Second, Jordan asserts that, because Plaintiff refers to Jordan under the collective term "Provider Defendants," the Third Amended Complaint fails to allege that Jordan's actions towards Hernandez constituted negligence. (*Id.*)

As to her first argument, Defendant Jordan fails to explain — beyond her conclusory statement that Plaintiff failed to allege a claim — why Plaintiff's negligence claim fails. Moreover, Jordan admits in the context of Plaintiff's constitutional claims that Plaintiff's allegations "at most . . . amount to medical malpractice." (ECF No. 110 at 16–17.) And under Virginia law, medical malpractice includes "any tort action . . . for personal injuries or wrongful death," which includes Plaintiff's instant state law claims. Va. Code Ann. § 8.01-581.1. As a result, Jordan's Motion fails to undermine Plaintiff's plausibly alleged negligence claim.

As to Jordan's second argument, the Court already addressed in its discussion of Jordan's argument for dismissal under Rule 8, *see supra* Section III.B, Plaintiff's references to Jordan both individually and as a "Provider Defendant" do not affect the validity of her pleading.

As such, the Court finds that the Third Amended Complaint plausibly pleads that Jordan owed a duty to provide adequate medical treatment to Hernandez as an inmate at LCC, and that she breached that duty through her inadequate provision of care, which contributed causally to Hernandez's suffering and/or death. Therefore, Plaintiff has sufficiently alleged a claim of

negligence against Jordan.  Accordingly, the Court will DENY Jordan's Motion to Dismiss Counts One and Two.

### 2.    Wrongful Death – Gross Negligence (Count Five) as to Defendants Breckon and Jordan

In Count Five, Plaintiff alleges gross negligence pursuant to Virginia's wrongful death statute against Defendants Breckon and Jordan.  As to Jordan, Plaintiff bases her allegation of gross negligence on the same factual predicate discussed above for Count One.  *See* supra Section III.F.1.  As to Breckon, Plaintiff argues, under an apparent supervisory liability theory, that "Breckon was responsible for ensuring that the facility's employees were equipped to respond to foreseeable medical emergencies, and the failure to do so amounts to gross negligence, as it is clear that not even slight diligence was performed by Defendant Breckon in ensuring that Mr. Hernandez would be safe as an inmate at Lawrenceville Correctional Center." (ECF No. 127 at 7.)  As explained below, the Court finds that Plaintiff has failed to state a claim for gross negligence against these Defendants.

Claims for gross negligence "must fail as a matter of law when the evidence shows that the defendants exercised some degree of care."  *Fijalkowski*, 801 F. App'x at 914 (citing *Elliott*, 791 S.E.2d at 732).  "A claim for gross negligence under Virginia law requires a lesser showing of recklessness than a claim for deliberate indifference under the Eighth and Fourteenth Amendments."  *Hixson v. Hutcheson*, 2018 WL 814059, at *6 (W.D. Va. Feb. 9, 2018).  "The key difference is that in a gross negligence case, the plaintiff does not have to establish that the defendant subjectively knew of a substantial risk."  *Boley v. Armor Corr. Health Servs., Inc.*, 2022 WL 905219, at *10 (E.D. Va. Mar. 28, 2022).  Instead, the plaintiff must show that the defendant *should have known* the substantial risk existed.  *Coppage*, 906 F. Supp. at 1049 ("Unlike deliberate indifference, gross negligence does not require a juror to find that [the

defendant] subjectively knew of a substantial risk; it is enough that [the defendant] should have been aware of that risk.").

Defendant Jordan argues that Plaintiff's gross negligence claim fails as a matter of law, because she "exercised some degree of care and took certain measures to ensure the safety of [] Hernandez." (ECF No. 110 at 13.) Defendant Breckon, meanwhile, asserts that Plaintiff's gross negligence fails as to him, because Plaintiff does not allege that Breckon was even present at LCC on the night of the incident, let alone culpable for grossly negligent conduct. (ECF No. 114 at 5–6.)

The Court agrees with Jordan and Breckon, finding that Plaintiff has failed to state a claim for gross negligence against these Defendants. As previously stated, a claim for gross negligence "must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Fijalkowski*, 801 F. App'x at 914 (citing *Elliott*, 791 S.E.2d at 732). Here, the facts as alleged show that Jordan assisted in Hernandez's transport to LCC's medical unit and applied pressure to his bleeding wounds. The Court finds that these actions constitute "some degree of care," negating Plaintiff's gross negligence claim against Jordan as a matter of law. *Fijalkowski*, 801 F. App'x at 914 (citing *Elliott*, 791 S.E.2d at 732).

As to Breckon, Plaintiff's claim of gross negligence boils down to her assertion that Breckon performed "not even slight diligence . . . in ensuring" Hernandez' safety at LCC. (ECF No. 127 at 7.) But Plaintiff fails to provide any factual support for this allegation. Such formulaic and threadbare allegations, without more, are patently insufficient to state a claim of gross negligence. *Iqbal*, 556 U.S. at 678. Accordingly, the Court will GRANT Jordan and Breckon's Motions to Dismiss Count Five against them.

### 3.    Survival – Gross Negligence (Count Six) as to Defendants Breckon and Jordan

In Count Six, Plaintiff again alleges gross negligence, this time under Virginia's survival statute.  For such a claim, the standard for gross negligence remains the same except for the resulting injury:  instead of death, a survival claim offers damages for personal injuries "that did not cause [] death." *Centra Health*, 277 Va. at 69.[17]

Plaintiff's gross negligence claim for survival fails for the same reasons as her wrongful death claim.  As discussed above, Jordan exhibited "some degree of care" in her actions towards Hernandez, negating liability under a gross negligence theory, while Plaintiff's claims against Breckon prove too formulaic and conclusory to validly state a claim.  Accordingly, the Court will GRANT Defendants Jordan and Breckon's Motions to Dismiss Count Six.

In sum, Plaintiff adequately stated a claim for negligence against Jordan, but failed to assert gross negligence claims against Jordan and Breckon.  Accordingly, the Court will DENY Jordan's Motion to Dismiss Counts One and Two.  As a result, these claims will proceed against Jordan.  Further, because Defendants Kamara, Williams and GEO fail to challenge Counts One and Two, these claims will proceed against them.  Additionally, the Court will GRANT Jordan and Breckon's Motions to Dismiss Counts Five and Six.  Because Defendants Kamara and Williams, as well as Correctional Officer Defendants and GEO, fail to challenge Counts Five and Six, these claims will proceed against them.

---

[17]    Plaintiff asserts her gross negligence claim for survival in the alternative to Count Five, which as discussed *supra*, is permissible at this stage.  (3d Am. Compl. ¶ 100; *Centra Health*, 277 Va. at 80.)

### G.    Respondeat Superior (Count Eight)

Count Eight asserts a freestanding respondeat superior claim against GEO.  (3d Am. Compl. ¶¶ 131–39.)  Specifically, Plaintiff alleges that GEO proves "legally responsible for the actions and inactions of its employees . . . conducted within the scope of their official duties and employment," including the "the negligence, gross negligence, and reckless indifference of Defendants."  (*Id.* ¶¶ 133–35.)  GEO challenges this allegation, though only "to the extent [that] Plaintiff seeks recovery under Count Eight for [§] 1983 violations."  (ECF No. 114 at 3.)  Because it is a well-established principle in federal civil rights litigation that employers cannot be held liable for § 1983 violations under a respondeat superior theory, the Court will GRANT GEO's motion to the extent that Plaintiff's Third Amended Complaint seeks to hold GEO liable for their employees' alleged § 1983 violations.  *Monell*, 436 U.S. at 691.

Additionally, because Count Eight proves both duplicative and improperly pled, the Court will DISMISS Count Eight in full.  First, Count Eight is duplicative, because Plaintiff's Third Amended Complaint pleads theories of liability against GEO based upon respondeat superior within Counts One through Six.  (3d Am. Compl. ¶¶ 52, 62, 72, 85, 92, 104.)  Thus, a freestanding respondeat superior claim merely regurgitates these same allegations.  Further, Count Eight is improperly plead, because respondeat superior is a theory of liability, not a cause of action.  *See e.g., Baird v. Holway*, 539 F. Supp. 2d 79, 91 (D.D.C. 2008) ("To begin with, respondeat superior is a theory of liability, not a separate cause of action that demands its own count.")  As a result, the Court will not allow Count Eight to proceed as pled.  To the extent that Plaintiff pleads theories of liability based upon respondeat superior against GEO for the alleged negligence and gross negligence of its employees under Counts One through Six, those claims will proceed.

H.      **Damages**

Plaintiff seeks $350,000 in punitive damages for Defendants' alleged gross negligence and deliberate indifference.  (3d Am. Compl. ¶¶ 99, 110, 122, 130, 139; *Id.* at 25.)  Defendant Jordan challenges Plaintiff's request for punitive damages as to her, arguing that Plaintiff's request proves conclusory and lacks the requisite facts demonstrating egregious conduct that would entitle Plaintiff to punitive such damages.  (ECF No. 110 at 20–21; ECF No. 125 at 7.) Jordan further asserts that Plaintiff's damages, both compensatory and punitive, are subject to a statutory cap of $2.45 million.  (ECF No. 110 at 11.)  Plaintiff disagrees, arguing that she has adequately pleaded a claim for punitive damages and that Jordan fails to cite authority for the proposition that her damages are subject to a statutory cap.  (ECF No. 124 at 7, 11–12.)  The Court will first analyze Plaintiff's request for punitive damages before addressing Jordan's statutory cap claim.   Since the Court already found that Plaintiff failed to adequately state a claim for deliberate indifference under § 1983 as to Defendant Jordan, the Court limits its punitive damages analysis to Plaintiff's state law claims against Jordan.  The Court concludes that Plaintiff's allegations fail to support a claim of punitive damages against Defendant Jordan, and that Plaintiff's recovery stands subject to the statutory cap.

Virginia's Wrongful Death statute provides that "[p]unitive damages may be recovered for willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others."  Va. Code Ann. § 8.01-52(5).  The Supreme Court of Virginia has elaborated that "negligence which is so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct, will support an award of punitive damages."  *Owens-Corning Fiberglas Corp. v. Watson*, 413 S.E.2d 630, 640 (Va. 1992).  The court defined willful and wanton negligence as "acting consciously in disregard of another person's rights or acting

43

with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id.* (citing *Griffin v. Shively*, 315 S.E.2d 210, 213 (Va. 1984); *Infant C. v. Boy Scouts of Am., Inc.*, 391 S.E.2d 322, 327–28 (Va. 1990)). "This definition nearly mirrors the subjective prong of the *Farmer* test, which requires a plaintiff provide 'proof of the official's actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction.'" *Hutcheson*, 2018 WL 814059, at *9 (quoting *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016)). The Court determined at numerous points *supra* that Jordan's conduct fell short of conscious disregard or reckless indifference to Hernandez under the *Farmer* test. *See supra* Sections III.C.1–2; III.F.2–3. As a result, the Court finds that Plaintiff cannot seek punitive damages against Defendant Jordan.

As to Defendant Jordan's argument that Plaintiff's compensatory damages are subject to a statutory cap, Jordan cites Virginia Code § 8.01-581.15, which limits recovery in certain medical malpractice actions. (ECF No. 125 at 8.) Va. Code § 8.01-581.15 provides:

> In any verdict returned against a health care provider in an action for malpractice where the act or acts of malpractice occurred on or after August 1, 1999, which is tried by a jury or in any judgment entered against a health care provider in such an action which is tried without a jury, the total amount recoverable for any injury to, or death of, a patient shall not exceed the following, corresponding amount . . . July 1, 2020, through June 30, 2021 . . . $2.45 million.

Va. Code § 8.01-581.15. Health care provider includes "a registered nurse or licensed practical nurse." Va. Code Ann. § 8.01-581.1. This definition includes Jordan, who Plaintiff alleges is a licensed practical nurse. (3d Am. Compl. ¶ 6.) Further, malpractice is defined as "any tort action or breach of contract action for personal injuries or wrongful death, based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." Va. Code Ann. § 8.01-581.1. This definition includes Plaintiff's instant wrongful

death and survival claims against Jordan.  As a result, the Court finds that Plaintiff's claims against Jordan are, indeed, subject to a statutory damages cap of $2.45 million under Va. Code § 8.01-581.15.

Accordingly, the Court will GRANT Defendant Jordan's Motion to the extent that it seeks to strike the punitive damages claim against her.  Further, the Court will GRANT Jordan's Motion to the extent that it seeks to assert a statutory cap on damages that Plaintiff may seek against her.

## IV.    CONCLUSION

For the reasons set forth above, the Court will GRANT IN PART and DENY IN PART Defendants' Motions to Dismiss. (ECF Nos. 103, 105, 109, 113.)  Specifically, the Court will (a) DENY Kamara's Motion to Dismiss for Lack of Standing and DENY AS MOOT the remaining Defendants' Motions to join Kamara's Motion, (b) DENY Jordan's Motion based upon Rule 8, (c) DENY Jordan's Motion as to Counts One and Two, (d) GRANT Jordan and Breckon's Motions as to Counts Five and Six, (e) GRANT Jordan, Kamara, Breckon and GEO's Motions as to Count Seven, (f) DENY AS MOOT Jordan and Kamara's assertion of qualified immunity, (g) DENY Jordan and Kamara's assertion of sovereign immunity, (h) GRANT GEO's Motion as to Count Eight, and (i) GRANT Jordan's Motion as to punitive damages and a statutory cap on compensatory damages.  The Court will also DENY Defendants' various Motions and Notices requesting a hearing on their Motions to Dismiss. (ECF Nos. 115, 123, 126, 129.)  Additionally, because Count Eight proves both duplicative and improperly pled, the Court will *sua sponte* dismiss the remainder of Count Eight in full.  The remaining Counts will continue in this litigation.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: May 15, 2025

46